IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

VICTORIA L. HAYNES (f/k/a BASS)                                    PLAINTIFF

v.                                   NO. 6:18-CV-06086

BENTON NED BASS                                                           DEFENDANT

**MEMORANDUM OPINION AND ORDER**

### I. INTRODUCTION

Before the Court is a Motion for Summary Judgment filed by the Defendant on August 30, 2019. (ECF No. 16). The Plaintiff responded on September 27, 2019. (ECF No. 21). The parties contest whether subject matter jurisdiction is proper, and whether the Plaintiff filed suit within the applicable statute of limitations period. These matters are now ready for consideration. Upon review, the Defendant's Motion for Summary Judgment should be **GRANTED** because the lawsuit falls within the domestic relations exception to subject matter jurisdiction. Furthermore, even if jurisdiction were proper, this matter would be barred by the statute of limitations.

### II. BACKGROUND

Victoria L. Haynes and Benton Ned Bass entered their second marriage in 1995.[1] They signed a postnuptial agreement, respectively, on the 19th and 21st days of December 2007. Haynes filed for divorce several days later, on December 26th. During their three-day divorce trial, held in September 2013, neither party contested or raised the validity of the postnuptial agreement. The Garland County Circuit Court entered a divorce decree on January 24, 2014.

---

[1] The parties were previously married to each other from 1981 until 1994.

After twelve years of litigation, the divorce action has still not been finalized. Haynes has twice appealed the divorce decree within the Arkansas state court system. Most recently, on February 13, 2019, the Arkansas Court of Appeals dismissed her second appeal for lack of finality. Haynes had argued the circuit court erred in ordering her to reimburse Bass for servicing a certain amount of marital debt and related expenses for property to be sold pursuant to the divorce decree.[2] The Court of Appeals granted Bass's motion to dismiss because Haynes filed her appeal before Marla Lammers, a CPA appointed by the circuit court to verify the amounts owed, completed an amended report of her findings. *Bass v. Bass*, 2019 Ark. App. 95, at 4-6 (2019). The circuit court must now adjudicate the issue of how much money Haynes owes Bass for servicing the marital debt. *Id*.

Haynes filed this diversity action on September 7, 2018, alleging one count of fraud arising from the sale of a business once owned by her and Bass.[3] The postnuptial agreement identifies this business as Brady Mountain Resort, and it also designates this business as a marital asset. (Postnuptial Agreement, ECF No. 16-3, at 3, ¶ 1). The business was in the process of being sold at the time the parties entered the agreement. The closing date took place on April 10, 2008, approximately four months after the agreement was signed. (*See* Closing Statement, ECF No. 16-1). The closing statement identifies the sellers as Benton Ned Bass, Vicky Bass, and Bass Management, Inc., an entity owned by Haynes and Bass. (Decree of Divorce, ECF No. 16-7, at 5, ¶ 12). The buyers are identified as CNL Income Brady Mountain Marina, LLC, and CNL Income Brady Mountain Marina TRS Corp.

---

[2] These expenses were associated with property not addressed by the postnuptial agreement. *See* Decree of Divorce, ECF No. 16-7, at ¶¶ 5, 7.

[3] Haynes also filed a motion for leave to file an amended complaint on June 6, 2019. The proposed amended complaint contained allegations in relation to the sale of Seabass Marine Corporation, an entity owned jointly by Haynes and Bass. This Court denied Haynes' motion for leave on August 12, 2019. (ECF No. 15).

The postnuptial agreement stated that proceeds derived from the sale of the business would be distributed to Haynes and Bass in equal portions. Each party received approximately $3,200,000 from the sale. Haynes claims that in 2016, she learned of various misrepresentations causing her to receive less money than what she was owed. She alleges that Bass lied about the following: (1) there being mortgages on the business property in excess of $5,000,000, and (2) that the business was sold to an unrelated third party. Haynes now claims there were not any mortgages on the property, and she also asserts the business was sold to an entity owned by Bass. She further alleges the business was sold for less than its market value so that Bass could purchase it for a lesser price. The business was sold for $14,000,000, but she claims it was worth an excess of $20,000,000.

### III. SUBJECT MATTER JURISDICTION

In general, diversity jurisdiction exists when "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and [involves] citizens of different States." 28 U.S.C. § 1332(a). But federal jurisdiction does not extend to "the so-called 'domestic relations' and 'probate' exceptions." *Marshall v. Marshall*, 547 U.S. 293, 299, 126 S. Ct. 1735, 1741, 164 L. Ed. 2d 480 (2006). The domestic relations exception divests federal courts of jurisdiction over the issuance of a divorce, alimony, or child custody decree. *Ankenbrandt v. Richards*, 504 U.S. 689, 704, 112 S. Ct. 2206, 2215, 119 L. Ed. 2d 468 (1992). The exception is not mentioned in the text of Article III or the federal diversity statute. *See* U.S. CONST. art. III, § 2, cl. 1; 28 U.S.C. § 1332(a). It exists as a matter of judicial construction, recognizing congressional silence as acceptance of the longstanding rule that federal courts should refrain from domestic relations matters. *Ankenbrandt*, 504 U.S. at 700-01, 112 S. Ct. at 2213; *Barber v. Barber*, 21 How. 582, 584, 16 L. Ed. 226 (1858).

The issue here is whether this case belongs within the sphere of domestic relations for purposes of subject matter jurisdiction. Haynes and Bass are completely diverse from each other, and the amount in controversy clearly exceeds $75,000. Haynes argues this dispute is not a domestic relations matter, but rather a "matter of fraud between business co-owners." (Pl.'s Brief, ECF No. 22, at 5). Bass contends the issues in this case are inextricably intertwined with the parties' divorce action. (Def.'s Brief, ECF No. 17, at 16).

In *Wallace v. Wallace*, 736 F.3d 764 (8th Cir. 2013), the Eighth Circuit noted that when claims are "inextricably intertwined" with a state court divorce proceeding, such claims are not within the scope of federal jurisdiction. *Id*. at 767. (emphasis added). In affirming the denial of subject matter jurisdiction, the court held that a husband's requested remedy would have required a federal court to undermine a state court judgment. *Id*. The husband in *Wallace* accused his spouse of stealing his social security number and other personal information in order to obtain several credit cards. *Id*. at 765. The husband then accused his spouse of accumulating approximately $40,000 in charges on the cards. *Id*. The state court labeled the credit card debt as "marital." *Id*. at 767. (emphasis in original). The Eighth Circuit held that federal court action could potentially "remove the label of 'marital debt'" and reallocate how the debt should be distributed. *Id*. Thus, the federal case was "inextricably intertwined" with the state action because the husband's requested relief could effectively nullify part of the state court's judgment. *Id*. Accordingly, the domestic relations exception applied, and subject matter jurisdiction was improper.

The property at issue in this case is indisputably marital. The postnuptial agreement classifies Brady Mountain Resort as marital property. The agreement contemplates the sale of this business and states that Haynes and Bass should receive equal portions of the proceeds. In

4

2014, the state court divorce decree said that neither Haynes nor Bass contested the validity of the postnuptial agreement. (Decree of Divorce, ECF No. 16-7, at 1-2, ¶ 4). The court then held the agreement was valid and enforceable. (*Id*.).

Haynes now requests relief that would essentially require this Court to decide upon an issue already determined throughout the divorce proceedings. Both the state court and federal actions are inextricably intertwined to the extent that relief from this Court would affect the distribution of marital assets under the postnuptial agreement. *See Kahn v. Kahn*, 21 F.3d 859 (8th Cir. 1994) (court lacked subject matter jurisdiction over former wife's tort claims against former husband when claims were "so inextricably intertwined" with a property settlement agreement made by the parties incident to their divorce proceedings); *Ankenbrandt*, 504 U.S. at 704, 112 S.Ct. 2206 ("federal courts lack power to issue [domestic relations] decrees because of the special proficiency developed by state tribunals over the past century and a half in handling issues that arise in the granting of such decrees"); *Budorick v. Maneri*, 2016 WL 10636371, at *3 (N.D. Ill. Dec. 19, 2016), *aff'd*, 697 App'x 876 (7th Cir. 2017) ("Marshalling the marital property and dividing it goes to the heart of the responsibility of the divorce court."). Any action from this Court would undermine the state court's obligation to evaluate the validity of a postnuptial agreement and to ensure the agreement's contents are fair and equitable. *See Simmons v. Simmons*, 98 Ark. App. 12, 15, 249 S.W.3d 843, 846 (2007) (stating that postnuptial agreements are "subject to close scrutiny"). The issue in this case, which is the allocation of marital property incident to a postnuptial agreement, is inextricably intertwined with the parties' Garland County divorce proceeding.

Accordingly, the domestic relations exception applies. The Court is precluded from exercising subject matter jurisdiction over this case.

## IV. STATUTE OF LIMITATIONS

Even if the Court determined that it had jurisdiction, this action is barred by the applicable statute of limitations. A federal court sitting in diversity must apply state substantive law, which includes the statute of limitations for a cause of action brought under state law. *Larsen v. Mayo Med. Ctr.*, 218 F.3d 863, 866 (8th Cir. 2000) (state statute of limitations applied in federal diversity action); *see also Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Guaranty Trust Co. v. York,* 326 U.S. 99, 110, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

To commence a fraud action in Arkansas, the lawsuit must be brought within three years from the date the fraud occurred. Ark. Code Ann. § 16-56-105; *see also Hampton v. Taylor*, 318 Ark. 771, 777, 887 S.W.2d 535, 539 (1994). However, fraudulent concealment suspends the running of the statute of limitations, and the suspension is effective until the "the party having the cause of action discovers the fraud or should have discovered it by the exercise of due diligence." *Shelton v. Fisher*, 340 Ark. 89, 96, 8 S.W.3d 557, 561 (2000). In order to prove fraudulent concealment, there must not only be an act of fraud; the fraud must be "furtively planned and secretly executed so as to keep the fraud concealed." *Id*. at 96, 8 S.W.3d at 562. When it is clear from the face of the complaint that an action is barred by the statute of limitations, the party asserting fraudulent concealment has the burden to prove the following by a preponderance of the evidence: (1) there must be a positive act of fraud, (2) that is actively concealed, and (3) is not discoverable by reasonable diligence. *Bomar v. Moser*, 369 Ark. 123, 132, 251 S.W.3d 234, 242 (2007); *Curry v. Thornsberry*, 354 Ark. 631, 638, 128 S.W.3d 438, 441 (2003).

Haynes' claim for fraud is untimely unless the running of the statute of limitations period was suspended. Her complaint contains allegations that would have occurred around April 10, 2008, the closing date for the sale of Brady Mountain Resort. Haynes filed this lawsuit on September 7, 2018. The complaint alleges that Bass "set up an elaborate plot to defraud [Haynes] out of her ownership and equity" in the business. (ECF No. 1, Compl., ¶ 5). Haynes' complaint refers to alleged misrepresentations asserting there were mortgages on the business property, and that the business was sold to an unrelated third party. (*Id*. at ¶¶ 7-8). Haynes now claims the business was sold to an entity owned by Bass "so that [he] could buy the [business] on the cheap." (*Id*. at ¶ 10). She states that she was unable to uncover Bass's fraud until December 2016. (ECF No. 22, Pl's Brief, at 5). Her justification is based on the notion that Bass never filed the deed transferring title in the business property until 2016. (*Id*. at 4; *see also* Mullenix Report, ECF No. 21-2). Haynes thus asserts that the statute of limitations for this action was not effective until December 2016, the date in which she allegedly discovered Bass's fraud.

The Court is not persuaded by Haynes' argument. She could have exercised reasonable diligence to uncover the allegations she presents. "[I]f a plaintiff, by the exercise of reasonable diligence, might have detected the fraud, he [or she] is presumed to have had reasonable knowledge of it." *Delanno, Inc. v. Peace*, 366 Ark. 542, 548, 237 S.W.3d 81, 86 (2006). A party cannot avail herself of fraudulent concealment when the concealment should have been discovered by the exercise of reasonable diligence. *Bomar* 369 Ark. at 131-32, 251 S.W.3d at 241-42. Here, Haynes could have simply discovered the identities of the buyers by reviewing the closing statement, a document that bears her signature at the bottom. (*See* ECF No. 16-1). The closing statement lists the buyers as: (1) CNL Income Brady Mountain Marina, LLC, and (2) CNL Income Brady Mountain Marina TRS Corp. The exercise of reasonable diligence could

have revealed Bass's alleged ownership stake in these entities. Reasonable diligence would have also revealed whether the property was sold for its fair market value in 2008. Despite her assertion that the business property sold below market value, Haynes fails to allege facts explaining how Bass concealed the fair market value of the property.

Accordingly, Haynes cannot properly invoke fraudulent concealment. Her lawsuit is untimely under the applicable statute of limitations period.

## V. ORDER

For the reasons stated hereinabove, Defendant's Motion for Summary Judgment should be and hereby is **GRANTED**. It is further ordered that this case is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED this 19th day of December 2019.**

/s/ *Robert T. Dawson*
**ROBERT T. DAWSON**
**SENIOR U.S. DISTRICT JUDGE**